## DANIEL C. DAVIS *vs.* LE BARON PUTNAM & others.

The representation, made to the jailer by a debtor committed on execution, of his desire to take the poor debtors' oath, is sufficient, if it is addressed to the person who is actually jailer, and describes him as "underkeeper of the jail."

The notice given by a justice of the peace to a judgment creditor, of his debtor's desire to take the poor debtors' oath, need not state that the debtor represented to the jailer his inability to pay the debt, nor that the same was made known by the jailer to the justice.

Such notice need not state the amount of the debt, nor describe the execution more particularly than as an execution at the creditor's suit, issued from a certain court of common pleas at a certain date.

Such notice may describe the debtor as "a prisoner in jail," although he has given bond for the liberty of the prison limits.

Such notice sufficiently appoints the time and place for an examination of the debtor, by stating that at a time and place named the debtor will be admitted to the oath allowed by the Rev. Sts. *c.* 98, unless some sufficient objection be made on the part of the creditor.

A certificate of discharge of a poor debtor is not invalidated by the initial letter only of his Christian name being given, and all statement of his occupation omitted, in his representation to the jailer, in the application of the jailer to a justice, in the notice by the justice to the creditor, and in the certificate of discharge; if the notice to the creditor accurately states the date of the execution and the court which issued it.

The return of an officer of sufficient service of a notice to a judgment creditor of his debtor's desire to take the poor debtors' oath cannot be amended after the discharge of the debtor, so as to show that no legal service thereof was made.

ACTION OF CONTRACT upon a bond for the liberty of the prison limits. The breach assigned was the failure of Putnam, the principal, to surrender himself at the expiration of the ninety days. The defence relied on was his discharge under the acts for the relief of poor debtors. The question of the validity of that discharge was submitted to the judgment of the court upon the following statement of facts :

Putnam, who had previously been committed on execution in favor of the plaintiff to the jail of Worcester county, after the execution of the bond, and while at large on the prison limits, made a request in writing "to Rufus Carter, underkeeper of the jail in Worcester," stating that he was unable to pay the debt for which he was imprisoned, and was desirous to take the benefit of the law for the relief of poor debtors, and requesting Carter to make application to a justice of the peace for a notifi-

cation to the plaintiff, signifying such desire. This request was signed " L. B. Putnam ; " and Carter thereupon, " in behalf of L. B. Putnam," applied to John A. Dana, a justice of the peace for the county of Worcester, who issued a citation in the following form :

　· " Worcester, ss. To Daniel C. Davis, of Boston in the county of Suffolk. You are hereby notified that L. B. Putnam, of Sutton in the county of Worcester, who is a prisoner in jail in Worcester in the county of Worcester, on an execution at your suit, issued from the court of common pleas holden at Boston within and for the county of Suffolk, bearing date the twenty-fifth day of April in the year of our Lord one thousand eight hundred and fifty three, is desirous to take the oath prescribed in the ninety-eighth chapter of the revised statutes, for the relief of poor debtors who are committed on execution for debt ; and that, at the said jail, on the twenty-seventh day of May instant, at ten of the clock in the forenoon, the said L. B. Putnam will be admitted to the oath or affirmation allowed by said act, unless some sufficient objection be made on your part. Given under my hand and seal, this twentieth day of May A. D. 1853.
　　　　　　　　" John A. Dana, Justice of the Peace."

Upon this citation an officer returned that he had served it, by giving a copy in hand to the plaintiff. And two justices of the peace and of the quorum granted a certificate of discharge of " L. B. Putnam," addressed to " Rufus Carter, underkeeper of the jail in Worcester," and otherwise conforming to the Rev. Sts. *c.* 98, § 10.

After the granting of the discharge, and after the expiration of the ninety days, and before the commencement of this action, the officer filed with the papers in the case an amended return, to the effect that he could not find the creditor, or any last and usual place of abode of his ; but had left the copy of the citation, inclosed in an envelope addressed to him, at a shop at which he was informed that the creditor was in the habit of receiving his letters ; and it was agreed that, if it was competent for the officer to make this amendment at the time he did, or if it be competent for him now to make it, is to be considered as part of the

case. It is also agreed, that the defendant can show that the plaintiff subsequently admitted to the officer that he received · the copy in season to have attended at the time and place specified therein.

*G. Bemis,* for the plaintiff. The record of the justices shows the following defects, some or all of which invalidate the debtor's discharge :

1. The debtor's application was not made, as the statutes require, to the "jailer," who is a deputy of the sheriff, but to the "underkeeper," who is a distinct officer ; and was therefore insufficient. Rev. Sts. *c.* 98, § 1 ; *c.* 14, § 82 ; *c.* 143, § 34. *St.* 1844, *c.* 154, § 10. *Bruce* v. *Keogh,* 7 Cush. 536. *Stevens* v. *Edwards,* 16 Law Reporter, 40. Courts will not take judicial notice who are the sheriff's deputies. 1 Greenl. Ev. § 6.

2. The notice to the plaintiff is defective and insufficient in several particulars ; and this notice is of the more importance, because it issues from another authority than the examining magistrates ; and upon its regularity their jurisdiction depends. *St.* 1787, *c.* 29, § 2. *Park* v. *Johnston,* 7 Cush. 266. *Barker* v. *Moffat,* 7 Cush. 262. *Bruce* v. *Keogh,* 7 Cush. 537. *Young* v. *Capen,* 7 Met. 290. Hartshorn's Sheriff, (2d ed.) 403.

This notice omits to inform the debtor of the essential prerequisites, that the debtor has represented to the jailer that he is unable to pay the debt for which he is imprisoned, and that the jailer has made known the same to the justice issuing the citation. Rev. Sts. *c.* 98, §§ 1, 2. *Collins* v. *Douglass,* 1 Gray, 167. *Dunham* v. *Burlingame,* 2 Met. 274. *Young* v. *Capen,* 7 Met. 287. *Hanson* v. *Dyer,* 17 Maine, 96. Hartshorn's Sheriff, 403.

3. The notice is imperfect in not specifying that the execution is an "execution upon a civil action for debt," and its amount. Rev. Sts. *c.* 98, § 1. *St.* 1844, *c.* 154, § 10. *Hathaway* v. *Stone,* 33 Maine, 500. *Dunham* v. *Burlingame,* 2 Met. 271. *Leach* v. *Hill,* 3 Met. 173.

4. The notice falsely informs the creditor that his debtor is "a prisoner in jail," when, in fact, he is at large within the limits ; and this distinction is of consequence, especially in deter-

mining the creditor's liability for his support as a pauper. Rev. Sts. c. 97, §§ 54, 61, 62. St. 1844, c. 154, §§ 7, 8, 10.

5. The notice is substantially defective, and contrary to law, in setting out that the debtor will be admitted to the oath, unless some sufficient objection be made on the part of the creditor; whereas the law does not make it the duty of the examining magistrates to grant the discharge as of course, but only if the debtor, upon examination, appears, in their discretion, to be entitled to it. Sts. 1787, c. 29, § 2; 1817, c. 186, § 1; 1844, c. 154, §§ 6, 7, 8, 10. Rev. Sts. c. 98, §§ 4–8, 10. Hayward, petitioner, 10 Pick. 358. Little v. Cochran, 24 Maine, 509. And the statutes require that the notice to the creditor shall be of " the examination." Rev. Sts. c. 98, § 2. St. 1844, c. 154, § 2.

6. The application to the underkeeper and that to the justice, the citation to the plaintiff, and the certificate of discharge, are all insufficient, because they give only the initials of the debtor's Christian name, and omit his degree or occupation. Collins v. Douglass, 1 Gray, 167. Kinnersley v. Knott, 7 C. B. 980, and 12 Law Reporter, 186. St. 1786, c. 28, § 1. 5 Dane Ab. 702, 703.

7. The amendment of the officer's return is allowable, being made at his instance, though his return could not be contradicted by other evidence. Park v. Johnston, 7 Cush. 267. Ward v. Clapp, 4 Met. 455. Collins v. Douglass, 1 Gray, 167. The amendment, being allowed, shows that the service was illegal and void. St. 1844, c. 154, § 3. Young v. Capen, Park v. Johnston, and Hanson v. Dyer, above cited. Ames v. Winsor, 19 Pick. 247. The fact that the plaintiff received the notice in time does not vary the case. Fitzgerald v. Salentine, 10 Met. 436. Bruce v. Keogh, 7 Cush. 539.

P. C. Bacon, for the defendants.

Merrick, J. There has been no breach of the bond declared on, and the plaintiff had no legal cause of action against the defendants, if Putnam was properly discharged from imprisonment, under the certificate of the magistrates that he had taken the oath allowed by law to be administered to poor debtors. For, after such a certificate has been duly made, a debtor, com-

mitted to jail upon an execution for debt, can no longer be held in custody by force of that precept, nor be in any way restrained of his liberty. But if the proceedings, before the time when, and under which the magistrates acted, were not regular and in conformity with the statute upon that subject, the departure of the prisoner out of the limits of the jail constituted an escape, and was a forfeiture of the bond given by him and his sureties. *Putnam* v. *Longley*, 11 Pick. 487. *Bruce* v. *Keogh*, 7 Cush. 536. It is therefore necessary to determine whether any of the objections taken by the plaintiff disclose a material irregularity in the proceedings, or show a want of compliance with the requisitions which the law makes indispensable to the validity of the final action of the magistrates. Upon careful examination we do not find that any one of them can be sustained.

1. It was necessary, in the first place, that the representation of his inability to pay the debt for which he was committed should have been made by the debtor directly to the jailer. Rev. Sts. *c.* 98, § 1. It appears from the papers annexed to the statement of facts that he did make a written representation to that effect to Rufus Carter; and it is not now denied that Carter was at that time in fact the jailer. He was therefore the person and the officer to whom only such a communication could have been properly and legally made. But the objection is, that in the application of the debtor he was not denominated the jailer, but was described as the underkeeper of the jail. And it is contended that this is a misdescription so material and decisive as necessarily to vitiate all the subsequent proceedings. But it certainly misled no one. Carter understood that the application was made to him in his official capacity, and acted accordingly. The statute prescribes no form or manner in which such a representation shall be made; and nothing more therefore can be essential than to address it to the proper officer, in terms which indicate its object and purpose with reasonable precision and certainty. This, we think, in the present case was done.

2. It was not necessary that the notice given by the justice to the creditor should contain any statement of the representation which had been made to the jailer by the debtor, of his ina-

bility to pay the debt for which he was imprisoned. The duty of the justice is limited to the appointment of a time and place for the examination of the debtor, and to the giving notice of it to the creditor by a citation under his hand. The citation should state clearly the appointment that is made, but need not recite the cause or occasion of making it. Rev. Sts. *c.* 98, § 2.

3. The plaintiff's next position is clearly untenable. That the execution was an execution for debt in a civil action is clearly imported in the statement that the prisoner was in jail at the suit of the creditor. No such execution could have been obtained by him except upon a judgment in his behalf in a civil action. The statement of the amount due upon it was wholly unnecessary ; because, whatever the amount may have been, the debtor was equally entitled to the benefit of the provisions of the statute under which he sought relief.

4. The recital in the citation, that Putnam was a prisoner in the jail at Worcester, on an execution in favor of the present plaintiff, was well warranted by the then existing facts. He had been duly committed upon the execution ; he had never been discharged from his imprisonment; but, by giving the bond for such purpose required by law, he had entitled himself to the privilege of the prison limits. The law recognizes these limits as a place of qualified imprisonment; and treats them, as to persons committed on execution for debt, not less than the building in which prisoners may be held in close custody, as part of the jail. Rev. Sts. *c.* 97, §§ 61, 62, 63.

5. The statute requires that the justice, to whom the jailer makes known the representation of the debtor that he desires to take the benefit of the law for the relief of poor debtors, shall appoint a time and place for his examination, and, by a citation under his hand, give notice of it to the creditor. § 2. It is contended, on behalf of the plaintiff, that the justice failed, in both of these particulars, to discharge his duty. But the notice and recital in the citation that, " at the said jail, on the twenty-seventh day of May instant, at ten of the clock in the forenoon, the said L. B. Putnam will be admitted to the oath or affirmation allowed by said act, unless some sufficient objection be

made on your part," necessarily imported and implied the appointment of a time and place for his examination.   The " oath allowed by said act" is the oath only which the two magistrates, before whom the debtor appears, are empowered and directed to ' administer after they shall have become satisfied, upon a previous examination of the debtor, that he is justly entitled to take, and that they can thus lawfully administer.   Notice therefore to the creditor that the debtor would, at a certain time and place particularly mentioned, take the " oath allowed by law," was virtually, and in effect, notice that that time and place were appointed for his examination ; because without such preliminary examination no further proceeding could be had, and no oath be administered by the magistrates.   And this is the only material fact of which the creditor has any right or occasion to be informed.   The statute undoubtedly requires imperatively that this shall be communicated to him ; but it is unimportant in what words or language the communication is. made.   It is sufficient, if it be so unambiguous and distinct that its meaning cannot, without negligence or inattention, be misunderstood. The creditor, in this case, stands simply upon the technical objection ; he does not suggest that he was in any degree misled by want of clear information, or that he ever entertained a doubt as to the real meaning of the citation served upon him.   Under such circumstances, the notice which was given to him may well be considered a substantial compliance with the requirements. of the statute.

6. The proceedings cannot be considered irregular or materially defective, and as wanting in conformity with the requirements of the statute, because in the debtor's representation to the jailer, and in his application to the justice, and in the notice to the creditor, and in the certificate of the magistrates, the initial only of the debtor's Christian name is given, while his degree or occupation is wholly omitted.   It is obvious that, in all these papers, the debtor is so designated and described as to be clearly identified and distinctly known.   The jailer well understood who applied to him ; and he exhibited to the magistrate, in making known to him that application, a copy of the execu-

tion upon which the debtor was committed. And the justice, in his citation, stated with accuracy the court by which the judgment on which the execution issued was rendered, as well as the date of the execution itself. The tendency of all these circumstances was to indicate clearly to the creditor that the notice which was served upon him came from the debtor whom he had caused to be committed to jail. And as it is not suggested or pretended that these circumstances, or any of the alleged deficiencies, were calculated to mislead any party in interest, or that any mistake in reference to the identity of the debtor actually occurred, the description of him, although only the initial letter of his Christian name, was and is sufficiently full and complete. In principle, the present does not differ from the case of *Collins* v. *Douglass*, 1 Gray, 167.

7. The amendment by the officer of his return of the citation is wholly inadmissible. The parties and magistrates were all fully authorized, and indeed required, to act upon the papers— the record of the proceedings, and the doings of the several officers as returned by them—as they were on the day when the debtor was before the two justices to avail himself of the benefit of the act for the relief of poor debtors. As between the parties, the return of the officer is conclusive. If he made a false return, he is responsible for all the damages which it may have occasioned to either of the parties. See *Niles* v. *Hancock*, 3 Met. 568.                          *Judgment for the defendants.*